Thank you, Your Honor. May it please the Court, my name is Douglas Nelson. On behalf of the petitioner, Elder Gutierrez, I'd like to reserve two minutes for rebuttal. In this case, we have a native and citizen of Guatemala who is homosexual, HIV positive, and behaves in a very effeminate manner. The country reports from Guatemala convincingly show that there does exist, in our opinion, a pattern or practice of the government and society in general in Guatemala of persecuting persons with these characteristics. Our own U.S. Department of State reports say so. The problem is that during the respondent's testimony, he added facts that were not included in his written application. And the judge found those new facts to be a sign of incredibility, and he did not believe the respondent's testimony. Forgive me, he found, what did you say? Incredibility or not credible. He found that those additions to the respondent's claim were not credible. In particular... Well, he found that the respondent wasn't credible. Sorry? He makes an adverse credibility finding writ large, and under the Real ID Act, that's very tough for you. But I'm very interested in this other issue that you made in argument, which assumed that there was an adverse credibility determination, and you argued that your client could still prevail without his own testimony, basically. Yes, Your Honor. I mean, it's simple math in regards to withholding of removal and protection under the U.N. Convention against Torture. If it is believed that this petitioner is homosexual, HIV positive, and effeminate, and if we return such a person to his country of origin, where the evidence of record shows that he's likely to face severe persecution or torture, then the math adds up, and the court is compelled to grant him the relief that he seeks. Sorry, I.J. struggled with this, and I think tried to grapple with your argument. You said at one point in the closing that it has never been contested that this person is a homosexual, and there was a question about whether or not he was also HIV positive. That piece, the HIV positive status, is confirmed by a medical record. Correct, Your Honor. And he asked you, he or she, I guess, I don't even know, but the I.J. asked petitioner's counsel whether he wanted a finding that he was homosexual because he's HIV positive, and, of course, you said no, that that would not be appropriate. But you also said that he presents in a certain way, and he's testified that he's consistently identified as homosexual because of his manner and affect. And, yes, that's one of the deficiencies in the record, in that the judge was able to observe the response demeanor, but he didn't necessarily state what that demeanor was throughout the record. But it is clear to the observer that he possesses secondary characteristics, which some homosexuals possess. It's not clear to me. What you said in the record is that it's not contested that he is a homosexual, or you said, I think, not contested that he's a member of a protected group. And I couldn't tell whether you meant whether that was his orientation versus his status as HIV positive. But I looked in the transcript, and I can't see whether the government does ever contest that. Do you know? That was a back and forth that I would have with the government before and during the proceedings, but not on the record. So the government never raised that. Is there a place in the record? No, it's not recorded in the record. But I've known that government counsel for many years, and no one was going to contest. That wasn't the issue. Was the issue just whether or not this was a pattern or practice that we're talking about in Guatemala? Was that the most contested issue? Certainly the government argues forcefully that there was a lot of reason to find that your client lacked credibility because he added a whole lot of detail, right? Correct. And I think that is the ‑‑ they have a very strong argument on that point. But I don't hear, I don't see the argument on this other point. From the government, and I agree. I think that the evidence clearly does establish there is a pattern or practice. And so the missing piece ‑‑ Can you prevail if we don't agree? Sorry? Can you prevail if we don't agree? On the pattern or practice? Yes. Because ‑‑ No, on social group. I mean, what is the authority you relung on exactly? Well, we have to ask which relief we're asking. Are you referring to the withholding of removal, Your Honor, or to the torture convention claim? Let's take the CAT claim first. Social group doesn't matter for torture convention. Right. So you're just relying there on if we assume that there's a negative credibility determination, then you're relying for purposes of CAT convention on the ‑‑ really there's a hole in the record about any kind of a finding regarding what else may have established or whether the government has conceded his status as a homosexual. Correct. And from there, then you would be relying on the country conditions report. That's what you say in your briefing. Correct. Okay. And the country conditions are clear on that, that the police are corrupt and arbitrarily arrest persons. And that when a person is placed into prison or jail, they're facing life‑threatening conditions. They go further in saying that when placed in custody, they may be subjected to sexual abuse. So I don't think there's really dispute as to our own U.S. Department of State report on that matter. Okay. So that's CAT. Correct. And then can you switch back for me, if you would? Very good. So for withholding, we have the extra requirement to prove that he falls within a particular social group which deserves protection. And I think that all three show that he deserves ‑‑ or all three that he claims fit within that definition. And the three that you're identifying. Number one, a person who's perceived as having HIV. Number two, homosexual males in Guatemala. And number three, effeminate men or men with secondary characteristics that may suggest they're homosexual. And what is the case file that comes closest to supporting each of those, if you will? What are you relying on? It's not very clear, but a matter of Toboso Alfonso, which we cite in our brief. Karuni V. I believe it was Gonzales, which we also cite in our brief, which is also my case. Going to the definition of social group, which is always a big controversy and hard to do, I think that each of those characteristics has ‑‑ they are particular. They are identifiable. They are socially visible. Well, they can be. And your argument is that in this case, in this particular unique case, your argument is that they were because of the way your client presented. Correct. You've made that argument here quite expressly. But you're not arguing, I don't think, that that would be applicable generally across the board? I'm not quite sure. Just to the extent, I guess one of your groups is that somebody who possesses these characteristics very visibly. That's not true of an HIV status, certainly. Well, note that since the age of seven, when he began to demonstrate these characteristics, he's been threatened and harmed and discriminated against. Well, that's what he testifies to. But, of course, the government is going to immediately remind us that this theory relies on or presupposes, I've asked you to presuppose it, he's found to lack credibility. But I think we all read the testimony in certainly your briefing about this dating back to age, I think, seven. Seven. But if we're not relying on his testimony, what would the IJ have to go on? Well, I think the judge's mistake was that he threw out all of the testimony, basically, when he found that these additional details showed adverse credibility. And I distinguish this case from other cases, and if I just may briefly state why. If he had, for example, a claim of gang recruitment throughout all the paperwork and in the very end raised a political claim, I think the judge would have a leg to stand on. But here we have a person who presents himself and declares that he's homosexual. He describes his entire history. And then the judge says this testimony is vague, and I disagree that it was vague. And thereafter, the petitioner is pressed for more details, and that's when he provided these details. But the details relate directly to his claims for relief. They're not new. The history may be new. Well, they're new. They're not inconsistent. The history may be new, but they're not inconsistent. That's correct. But they're certainly new. With whom he is. And that was the problem IJ had. He said, I've never heard anything about this. They're horrific accounts, but they're new. Correct. That's correct. Okay. May I reserve the rest of my time? Thank you. Counsel. Are you the person who needed an accommodation in your schedule?  My apologies, Your Honor. Not at all. I'm just trying to make sure. Did we run you around, or did you get to your argument? I was able to attend the initial argument. Great, great, great. Okay. Good morning, Your Honors. My name is Linda Doe, and I represent the respondent, the United States Attorney General. In this immigration proceeding, Petitioner Gonzalez has not met his burden to prove his eligibility for withholding and cap protection, where he has omitted from his asylum application and declaration his alleged arrest, beating, detention, and 40-day detention by police officers, wherein he claims that police officers had not only condoned his sexual assault, but instigated it. Does the government contest the petitioner's self-identification as a homosexual or as transgender? Petitioner has not met his burden to prove that he is a member of his disfavored groups. What's the government's position? That he has not sustained his burden of proof. To establish a disfavored group, one of the elements is to establish that you are a member of such group. Judge Marshall's asking you whether or not you're contesting that, because there's an argument. I mean, it's quite expressed in the record where the, in this particular case, and again, it's a unique record, but Petitioner's argument said they've never contested this. He said that before the IJ, and there's no response from the government. So Judge Marshall is trying to get you to, was that right? Was that uncontested? Well, it's uncontested that homosexuals are a member of, are considered a particular social group. But he has not met his burden to prove his membership. So I'm going to ask you one more time, because now this will be the fourth time. On the record, and I'm not trying to be, you're probably sleep deprived. You've probably just gotten off a plane, but here's the question. The question is, on the record, in the transcript, the opposing counsel said the government has never contested this point. And in the transcript, the government doesn't respond. Did the government respond? Was that uncontested? Well, in the transcript. And the it is just whether he's, in fact, a homosexual. We wouldn't, I wouldn't, there's not enough information to determine that, Your Honor. So you don't know whether the government, what the government's position was? The government's position is that there's not enough evidence. I, Petitioner. I think, I think we understand your point. That's the best you can do. Were you at the other hearing? No, Your Honor. Okay, that's fine. So you don't know what the government's position was. Opposing counsel just represented that he's litigated several times with the other lawyer, and that throughout there were communications where this was uncontested. And you're just telling us, essentially, you weren't part of those conversations. Correct, Your Honor. All right, that's fine. So then, let me ask you this. If you could turn to, it's on page 98 of the transcript. What he, what he, opposing counsel said was, bottom line, whether you find him credible or not, he does present himself as a homosexual who sometimes dresses as a woman. If the court finds there's no pattern or practice, he's still a member of a disfavored group. And the IJ understood this argument and said, all right, so you're saying that even if I find him not credible, and you have a very strong argument, that the adverse credibility determination is well supported. The IJ said, even if I find him not credible, the evidence separated from his testimony would show either there's a pattern or practice or he's a member of a disfavored social group. And then Petitioner's lawyer said, correct. I think that's his theory today. That's at least one of his theories today. And I would just like to hear the government's response. Well, Petitioner, the IJ looked to independent evidence to corroborate or to rehabilitate his claims. They found, IJ found evidence of his HIV status and, therefore, considered his claim regarding his fear of future persecution in that regard. The IJ didn't find evidence of substantiating his membership in his other professed disfavored groups. Petitioner has been in the U.S. for a number of years and did not submit any statements in support. He claimed his sister knew, and he didn't submit a statement from his sister. He claimed that he had been in a consensual relationship in 2004, didn't submit a statement from his partner. There's no independent evidence establishing his membership in his other professed disfavored groups. Regarding his HIV status, the IJ found medical evidence attesting to his status. Petitioner has submitted evidence that there is discrimination against persons with HIV in Guatemala. However, the evidence does not show that such persons suffer harm rising to the level of persecution or that they're deliberately deprived medication. Accordingly, that evidence is insufficient to show that it is a pattern of practice of persecution against such persons or that he himself is at a personalized risk of being persecuted based on his HIV status. Accordingly, substantial evidence of the record supports the agency's denial of his application for withholding of removal. Regarding his cat claims, petitioner in this instance did not submit compelling evidence showing that it is more likely than not that he would be tortured upon his return. Here he set forth a number of unrelated yet varied string of hypothetical chain of events that could happen if he is removed. In his declaration, he claimed that it is possible that he would not be able to afford a tripla and the lapse of medication could then lead to him catching the flu, then pneumonia, and his eventual demise. Alternatively, he also claimed that it is possible that someone could discern his HIV status and inform someone who is interested in targeting such persons and that the government would then subsequently turn a blind eye to the torture. Lastly, he proposed that it was possible that a government official would perceive him to be transgender and then imprison him and then that could eventually lead to his torture while in detention. But petitioner's cat claim is premised and grounded in supposition, not record evidence. What about this very unique claim where his testimony is that, and his argument from his counsel, is that he presents as a homosexual and is very readily identified because this particular individual has mannerisms and affect that make this very readily identifiable. Given that argument from counsel and that the witness was there on the stand, do we need findings from the IJ about that? I believe that is a factual finding that would require some substantiation in the record. The standard review is substantial evidence of the record and whether the evidence compels that conclusion. Based on this record, I believe that he has not met his burden to prove his eligibility for withholding and cat protection. In light of that, if there are no further questions, the government requests that the court deny the petition for review and rest on its brief. Any questions? No. Thank you, counsel. And I don't have much more to add other than to answer any questions that you might have. We've concentrated on the withholding and on the torture convention. I think, actually, most attention should be paid to those reliefs. I understand we have a difficult argument regarding asylum and the one-year filing deadline. But I'm concerned that the board said that there's some evidence that these persons are discriminated against in Guatemala. It's not merely some evidence. It's overwhelming evidence. Right, but we have to have evidence that establishes that he was a homosexual. And I think that the appropriate remedy might be a remand so that testimony can be taken or the record developed further on that topic. I did find it surprising that, after all evidence was taken, there was no mention in the immigration judge's decision regarding the respondent's demeanor. He could have solved that issue had he noted the respondent's demeanor throughout the proceedings. Anything further? No, thank you, Your Honor. All right. Thank you, counsel. Thank you both for your arguments. We'll go ahead and go off record and we'll stand in recess for the day.
judges: Fernandez, Christen, Marshall